IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Ilona Bunton,<br><br>        Plaintiff,<br><br>        v.<br><br>Andrew Saul,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No.: 19-cv-50157<br><br>Magistrate Judge Margaret J. Schneider |

## MEMORANDUM OPINION AND ORDER

Plaintiff appeals a denial of disability insurance benefits and supplemental security income. For the reasons set forth below, her motion for summary judgment, Dkt. 14, is granted and the Commissioner's motion for summary judgment, Dkt. 19, is denied. The decision of the Administrative Law Judge is reversed and the case is remanded.

## BACKGROUND

A. Procedural History

Plaintiff Ilona Bunton ("Plaintiff") filed her applications for disability insurance benefits and supplemental security income on September 13, 2016. R. 201, 208. She alleged disability beginning August 3, 2014, in both applications. *Id.* Plaintiff's date last insured is December 31, 2021. R. 107. Her application was denied initially on October 21, 2016, and on reconsideration on January 31, 2017. R. 126, 133. Plaintiff filed a timely request for a hearing on February 15, 2017. R. 143. On April 13, 2018, a hearing was held by Administrative Law Judge ("ALJ") Kendall. R. 10. Plaintiff, represented by an attorney, appeared and testified, as well as Richard T. Fisher, an impartial vocational expert. *Id.* On June 28, 2018, the ALJ issued her opinion denying Plaintiff's claims for benefits. R. 105. Plaintiff appealed the decision to the Appeals Council, which denied Plaintiff's request for review on May 9, 2019. R. 1. Plaintiff now seeks judicial review of the ALJ's decision.

B. Factual Background

1. Medical Evidence

Plaintiff has a significant medical history related to her lower left extremity. In August 2014, she sustained multiple tibia fractures, necessitating four surgeries between August 2014 and March 2017. R. 570, 538, 888, 923-25. The first two surgeries occurred shortly after the injury. The first procedure, a closed reduction of left tibial plateau fracture subluxation, took place on

August 3, 2014. R. 696. The second procedure, an open reduction internal fixation ("ORIF"), occurred on August 19, 2014. *Id.* Following these procedures, Plaintiff was prescribed physical therapy, which she did three times a week. R. 684, 745-66. On September 3, 2014, Plaintiff's swelling post-operation was noted to be improved, and Plaintiff was told to elevate as she needed. R. 696-97. On December 18, 2014, Plaintiff's hardware from the first two procedures was surgically removed and a revision to the prior surgery was performed, with new hardware being installed. R. 684, 801-02.

By February 11, 2015, Plaintiff was walking with crutches. R. 753. On June 12, 2015, she visited the doctor due to a new injury to her knee. R. 666. Plaintiff was advised to continue with her current work restrictions of seated work in four-hour shifts, and she was instructed "on the importance of ice and elevation to help alleviate the symptoms of swelling." *Id.* She was found to be at maximum medical improvement at a doctor's visit on October 23, 2015 and was released from care by OrthoIllinois. R. 613-14. However, as of January 2016, she had further complaints of left leg and tibia pain and returned to OrthoIllinois. R. 451, 610. As a result, she began another course of physical therapy. R. 606-608. Through June 2016, she complained of left tibia pain and that her leg was giving out. R. 597-98. In July 2016, she reported that she continued to experience pain with activity as well as swelling. R. 593-95, 585-89.

On March 17, 2017, Plaintiff underwent the fourth surgery to remove the remaining hardware previously placed in her left tibia. R. 888, 923-25. As of April 2017, she had been diagnosed with traumatic arthropathy in the left knee, had begun discussing treatment options, and still experienced pain with activity. R. 882-83. On October 3, 2017, Plaintiff received a cortisone injection for her left knee and was told to use ice and proper elevation. R. 863. In December 2017, Plaintiff reported that she had experienced relief from the injection but that she still had knee pain with activity. R. 855. In January 2018, Plaintiff received Synvisc injections for her left knee. R. 848-853. However, she continued to report significant pain with activity. R. 852. She was recommended to limit her activities after the injections, and to use ice and proper elevation. *Id.*, R. 848, 850. Plaintiff may eventually undergo knee replacement surgery, but her doctor has advised that she should wait as long as possible due to her young age. R. 881.

2. Hearing Testimony

At the hearing before the ALJ on April 13, 2018, Plaintiff testified that she previously worked at Farm & Fleet, stocking shelves and clearing the warehouse. R. 21. However, she was hurt when security at the store was chasing a shoplifter and bumped into her, causing her to fall. R. 22. The ALJ asked Plaintiff why she felt she was disabled, and Plaintiff responded that she cannot stand, and when sitting she needs to elevate her leg to waist height in order to feel relief. R. 28, 33. She further testified that she has been taking medication for her leg pain every day since her injury; however, she tries to limit how frequently she takes the medication because it makes her sleepy and unable to drive. R. 29-31. Plaintiff also testified that she can only walk about a block due to her pain. R. 32. Plaintiff discussed her regular activities and stated that she does not do cooking, cleaning, or other chores around the house. R. 37. When she does grocery shopping, she uses the electric cart at the store. *Id.*

The vocational expert also testified at the hearing. The ALJ asked the vocational expert to assume a person of Plaintiff's age, education, and work experience, who can perform sedentary work except that she could not kneel, or crawl, could only perform routine repetitive tasks, and could not be off task more than ten percent of the work day. R. 41-42. The vocational expert testified that such an individual could perform various jobs such as a cashier, information clerk, mail clerk, or telephone quote clerk. R. 42. Plaintiff's counsel asked the vocational expert, "if a person has to elevate their leg to waist height, say two hours during an eight-hour work day, would that impact their ability to do those jobs?" R. 43. The vocational expert responded, "you can't do sedentary work with a leg elevated to waist height." *Id.*

3. The ALJ's Decision

The ALJ went through the five-step analysis for determining whether an individual is disabled under the Social Security Act in her written decision denying Plaintiff's claim. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity. R. 107. At step two, the ALJ found that Plaintiff had the following severe impairments: tibia fracture, status-post ORIF with revision; osteoarthritis of the left knee; and tachycardia. R. 108. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 110.

Before step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to the following restrictions: she could never climb ladders, ropes or scaffolds but could occasionally climb ramps or stairs; she could occasionally balance, stoop, and crouch, but could not kneel or crawl; and she should avoid all exposure to use of dangerous moving machinery and unprotected heights. R. 111. At step four, the ALJ found Plaintiff could perform past relevant work as a claims clerk. R. 117. At step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could have performed. R. 119.

**STANDARD OF REVIEW**

A reviewing court may enter judgment either "affirming, modifying, or reversing the decision of the [ALJ], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The ALJ's factual findings are conclusive if they are supported by substantial evidence, meaning "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). The reviewing court "is not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Notwithstanding, the Seventh Circuit urges that this review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Rather, a reviewing court should conduct a critical review of the evidence prior to affirming the ALJ's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). In addition, the decision will not be affirmed where the ALJ does not build a logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Federal courts may not build a logical bridge on behalf of the ALJ. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

# DISCUSSION

On appeal, Plaintiff argues that remand is appropriate for two primary reasons. First, Plaintiff argues that the ALJ failed to include a limitation in her RFC finding that she would need to elevate her leg. Second, Plaintiff argues that the ALJ erred in evaluating her subjective allegations addressing the intensity, persistence, and limiting effects of her pain and need to elevate her leg to alleviate that pain. The Court agrees that the ALJ's decision contains several errors in evaluating Plaintiff's subjective symptom allegations and the RFC analysis. Because the arguments regarding the RFC determination and subjective symptom analysis are related and overlap, the Court addresses them together.

In developing an individual's RFC, an "ALJ must evaluate all limitations that arise from medically determinable impairments, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC determination should include a discussion of how both the objective and subjective evidence supports the conclusion. *Briscoe ex rel. v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The ALJ "must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016) (internal citations omitted). The Seventh Circuit has remanded the decision of an ALJ who explained the decision to exclude a leg elevation requirement with a "cursory comment . . . [that t]he medical records do not support the limitations alleged by the claimant that she is medically required to elevate her legs." *Smith v. Astrue*, 467 F. App'x 507, 510 (7th Cir. 2012).

Similarly, in evaluating a claimant's subjective statements about her symptoms, "an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (7th Cir. 2009). An ALJ may not discount a claimant's testimony about her "pain and limitations solely because there is no objective medical evidence supporting it." *Id.*

After acknowledging that Plaintiff's determinable impairments could reasonably be expected to cause some of her alleged symptoms, the ALJ concluded, "as for the claimant's statements about the intensity, persistence and limiting effects of her symptoms, the medical record does not fully support finding that claimant's limitations are totally disabling." R. 112. The ALJ discounted Plaintiff's subjective symptom allegations because while "the record contains a number of notations that claimant should elevate her legs as needed . . . the need for [elevation], degree and frequency of [elevation] or amount of time claimant should elevate her leg was not delineated so as to suggest this would render claimant unable to perform sedentary work." *Id.* The ALJ further found that "treatment notes . . . did not provide specific recommendations for the amount of time and for how high the leg must be elevated." R. 113. Specifically, the ALJ found that Plaintiff's allegations were not supported because: (1) the records did not reflect that Plaintiff should elevate her leg aside from after specific procedures and did not provide recommendations for the amount of time and for how high the leg must be elevated; and (2) various treatment notes indicated that Plaintiff should engage in sit down work and/or did not indicate swelling or discoloration.

4

The ALJ's explanations for discrediting Plaintiff's subjective complaints are neither adequate nor supported. First, regarding the ALJ's complaint that the record lacked information regarding the need for elevation and the degree and frequency of elevation needed, there was ample evidence in the record that Plaintiff has consistently been instructed to elevate her leg. For example, Dr. Blomberg told Plaintiff that her soft tissues were too swollen to undergo surgery and that she was to continue elevation of her leg on August 11, 2014. R. 703. On September 3, 2014, Plaintiff's swelling continued to persist although it was noted to be improved. R. 696. On June 12, 2015, APN Max Button stated that he educated Plaintiff on the importance of ice and elevation to alleviate symptoms of swelling. R. 666. More recently, on October 3, 2017, treatment notes indicated ice and proper elevation were explained to Plaintiff in detail when she was seen for her knee injections. R. 864. Plaintiff's doctor also told her to use ice and proper elevation after a knee injection and check-up on her knee on January 8, 2018. R. 852. Plaintiff's testimony that she elevates her leg to alleviate pain and swelling is consistent with this evidence.

"ALJs need not address every piece of evidence in the record, but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (internal citation omitted). The ALJ's mere acknowledgement of Plaintiff's testimony and the characterization of the medical records in this case fails to build an accurate and logical bridge for excluding a leg elevation requirement. The ALJ mentioned Plaintiff's leg elevation testimony as well as the recommendations from her doctors that she elevate her leg at various points during her treatment. Yet, beyond that, the ALJ's decision includes no reasoned discussion of the leg elevation requirement. Nothing in Plaintiff's medical records indicated one way or the other that the advice that Plaintiff elevate her leg was temporary. The ALJ failed to explain how any of Plaintiff's medical records undermined her testimony that she needed to elevate her leg to alleviate the pain that she is currently experiencing.

Second, in discounting Plaintiff's subjective complaints that she needed to elevate her leg, the ALJ stressed that various aspects of the record included notes that Plaintiff could perform sit-down work and that her knee did not have any swelling or discoloration. The ALJ found that on June 12, 2015, APN Max Button stated that Plaintiff could observe work restrictions of seated work with four-hour shifts. R. 112.[1] This instance occurred 2 years before Plaintiff's pain worsened and she was ultimately diagnosed with traumatic arthropathy in the left knee. R. 882-83. The ALJ also observed that at visits on October 3, 2017, January 16, 2018 and January 22, 2018, Plaintiff had no swelling, discoloration, or deformity of her knee. R. 113 (citing R. 863-64, 848, 850). Yet, despite the lack of these symptoms, at each of these appointments, "ice and elevation" was also explained to Plaintiff. R. 864, 8848, 850. These are just two examples of where the ALJ's rationale fell short. Before concluding that Plaintiff did not need to elevate her leg, the ALJ should have rationally explained why she did not credit Plaintiff's testimony to the contrary. The ALJ may not cherry pick facts that support her conclusion and omit those that do not. *See, e.g., Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The Court takes note that an

---

[1] The Court notes that later in the opinion the ALJ afforded the work restriction of APN Button little weight, acknowledging that he "did not provide rationale as to why the claimant's impairments would limit her to four-hour shifts . . . On this particular date, the claimant did report significant pain, with 7/10 at rest and 9/10 with activity." R. 117.

5

ALJ's decision need not be perfect.  *See Biestek*, 139 S. Ct. at 1154.  Regardless, the Court cannot trace the ALJ's reasoning in leaving out a leg elevation requirement in this case.

The Court also finds that the ALJ erred in the standard she applied in the symptoms evaluation.  On remand, the ALJ should refrain from using the "not entirely consistent" boilerplate language that has been criticized by the Seventh Circuit.  The ALJ used the following boilerplate language in her opinion:

> After careful consideration of the evidence, I find claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence of record for the reasons explained in this decision.

R. 112.  This language has been criticized by the Seventh Circuit.  *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (noting the court has often criticized similar language as "meaningless boilerplate").  Boilerplate language has also caused courts to raise concern as to whether the ALJ was applying the correct evidentiary standard.  *See Minger v. Berryhill*, 307 F. Supp. 3d 865, 871-72 (N.D. Ill. 2018) ("[T]he ALJ must determine whether those allegations 'can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . that [not entirely consistent standard] . . . is clearly a different, and a not as rigorous, a standard than the ALJ's demanded in this case, namely that allegations be 'entirely consistent' with the medical and other evidence.")

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment, Dkt. 14, is granted, and the Commissioner's Motion for Summary Judgment, Dkt. 19, is denied.  The ALJ's decision is reversed and remanded for further proceedings consistent with this opinion.

Date: May 21, 2021                    ENTER:

*Margaret J. Schneider*
United States Magistrate Judge